**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

ROBERT PEACHER,

        Petitioner,

        v.                                                      CAUSE NO.: 3:23-CV-1106-TLS-JEM

WARDEN,

        Respondent.

**OPINION AND ORDER**

Robert Peacher, a prisoner without a lawyer, filed motion seeking to alter or amend the

order denying habeas relief pursuant to Fed. R. Civ. P. 59(e). ECF No. 59. "A court may grant a

Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered

evidence that was not available at the time of trial or if the movant points to evidence in the

record that clearly establishes a manifest error of law or fact." *Matter of Prince*, 85 F.3d 314, 324

(7th Cir. 1996); *see Deutsch v. Burlington N. R.R. Co.*, 983 F.2d 741, 744 (7th Cir. 1993).

On October 31, 2024, the Court denied the habeas petition, finding that Peacher could not

demonstrate actual innocence and that the purported interview transcript of an unidentified

individual was fraudulent. ECF No. 50. In the motion to alter or amend, Peacher now argues that

the Court should reconsider its finding that he could not demonstrate actual innocence based on

his interpretations of the evidence. These arguments are misplaced and suggest a

misunderstanding of the actual innocence standard. The actual innocence standard does not

merely require Peacher to demonstrate that a reasonable jury could find in his favor; it is a much

higher standard that requires him to demonstrate that no reasonable juror could find that he is

guilty. *See House v. Bell*, 547 U.S. 518, 538 (2006) ("[I]t bears repeating that the [actual

innocence] standard is demanding and permits review only in the extraordinary case." (cleaned up)). While a jury might find Peacher's arguments compelling, none of his arguments persuade the Court that no reasonable juror could find him guilty based on the totality of the evidence. Therefore, the Court declines to reconsider its finding regarding actual innocence.

Peacher also argues that the Court should reconsider its finding that the interview transcript of the unidentified security guard was fraudulent and that the Court should overlook the formatting discrepancies between this interview transcript and the interview transcripts of two other guards. Significantly, in the traverse, Peacher argued, "When the statement from Ron Lohrman, Monte Bevard, and the [unidentified] Lazarus guard are compared to each other, it becomes clear that all three initial statements were taken within a half hour of each other." ECF No. 32 at 29. In its order denying habeas relief, the Court accepted Peacher's invitation to compare the interview transcripts but found multiple formatting discrepancies between the interview transcripts of the identified guards and the unidentified guard. ECF No. 50 at 29.

In the motion to alter or amend, Peacher now specifically argues:

> Based on the interview transcript of Earl, the Lazarus Security guard, the interview itself was completed during the same time period as the interviews of Ronald Lorhman and Monte Bevard, but this does not mean, nor is there any indication that the interview transcript of Earl, the Lazarus Security guard, was transcribed from the audio recording at the same time as the other two interviews, as well as whether or not it was the same individual who did the transcribing. The Court leaves no room for there to have been two different individuals who transcribed the interviews at different times. The Court may then attempt to question why there would be two different individuals who transcribed the interviews and the answer lies with the fact that the interview of Earl the Lazarus Security guard demonstrated [the victim] was not being truthful and it was suppressed and not provided to [Peacher] prior to trial. The format discrepancies do not negate the information that is contained in the transcript, and it certainly does not mean the transcript is a forgery. It is very conceivable that after the interview Detective Williams suppressed the audio recording because she knew Earl's statement demonstrated that [the victim] was not telling the truth and that [Peacher] was innocent of the alleged crimes. It is therefore reasonable to believe that the interview was

2

transcribed by someone else, at a different time, which accounts for the differences
in the format, and these differences are harmless in this context.

ECF No. 59 at 24–25.

Notably, this argument directly undermines the argument presented by Peacher in the traverse, and it was not manifest error for the court to rely on Peacher's prior argument in considering the habeas petition. Further, the narrative implied by this new argument is even less plausible than Peacher's initial narrative set forth in the purported handwritten letter from the Marion County Prosecutor's Office, ECF No. 32-1 at 59. The new argument implies that a State employee transcribed audio-recorded interviews of two security guards in 1995 but that the lead detective prevented the transcription of a third interview recording in an effort to conceal it unlawfully while stopping short of destroying the audio recording. It implies that, at some point thereafter, a different and less meticulous State employee found the audio recording and transcribed the third interview against the prosecution's purported intent to unlawfully conceal it. It further implies that the prosecution then left it in Peacher's case file with an affidavit explaining that it had been unlawfully concealed but intentionally mislabeled it, redacted the identity of the interview, and made no effort to disclose it prior to 2022. While this narrative might explain the formatting discrepancies, it raises material concerns about the transcript's creation and integrity. Assuming the truth of this narrative, the Court is left with the interview of an unidentified individual transcribed and maintained in an unusual manner combined with the suspicious and even more unusual manner in which Peacher received the transcript and its stark inconsistency with the evidence presented at trial. At base, this new argument does not persuade the Court that it committed a manifest error of law or fact in finding that the interview transcript was fraudulent. Therefore, the motion to alter or amend judgment is denied.

Peacher also filed motions to stay or withdraw his appeal because he did not intend to initiate one. To Peacher's point, the Court construed his motion seeking to extend deadlines and to "preserve the ability to file an appeal" as a notice of appeal, relying on *Wells v. Ryker*, 591 F.3d 562, 564 (7th Cir. 2010) ("We have held that at least in some circumstances a motion for an extension constitutes a notice of appeal."). ECF No. 55. Nevertheless, this Court lacks the authority to stay or dismiss appellate proceedings, and Peacher has filed a substantially similar motion with the Seventh Circuit. Therefore, the Court denies the motions to stay or withdraw the appeal.

Finally, Peacher asks the Court to take notice of the dates of his motions as being filed on the date he indicated in the certificate of service. It is the Court's practice to use the date on which the document was received by the Clerk of Court as the filed date on the electronic docket. The certificates of service are also maintained on the electronic docket and speak for themselves.

For these reasons, the Court:

(1) DENIES the motion to alter or amend [ECF No. 59]; and

(2) DENIES the motions to stay or withdraw appeal [ECF Nos. 60, 64].

SO ORDERED on January 10, 2025.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

4